IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVANNE A. KIRKWOOD,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Civil Action<br><br>No.  09-1347 |

**MEMORANDUM**

On March 30, 2009, plaintiff Kevanne A. Kirkwood filed a complaint in this court seeking review of the denial of her application for Social Security disability insurance benefits ("DIB").  On August 16, 2010, this court determined that the administrative law judge ("ALJ") who heard her claim committed procedural error by failing to appoint a medical advisor as required by Social Security Regulation 83-20 ("SSR 83-20") and therefore remanded this action to the ALJ to conduct further proceedings.  Plaintiff has now moved for attorney's fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412.  Defendant, the Commissioner of Social Security ("the Commissioner"), opposes the motion on the grounds that its position in this case was substantially justified.  For the reasons set forth below, plaintiff's motion will be denied.

**I.    Background**

On June 23, 2005, plaintiff filed an application for DIB for impairment due to major depression and post-traumatic stress disorder ("PTSD"). She claimed an onset date of August 15, 2003. Her DIB claim was initially denied by the Social Security Administration, and then a hearing was held before an ALJ on February 6, 2007.

The evidence presented at the hearing showed that in April 2001, plaintiff began seeing Dr. Emanuel Garcia, who prescribed plaintiff medication to treat depression. Administrative Record ("Record") at 120. In April 2002, Dr. Garcia wrote a report that stated:

> Ms. Kevanne Kirkwood has been under my psychiatric care for the treatment of major depression accompanied by profound anxiety. Her condition has been a severe and debilitating one, one that has resulted in an incontrovertible impairment in her ability to work, study or engage productively in relationships with others. As a consequence of her depressive illness . . . Ms. Kirkwood's sleep, concentration, energy level and capacity to meet basic obligations of daily living have been seriously compromised. . . . There is no question in my mind that Ms. Kirkwood's illness constitutes a medical disability.

Record at 123. In February 2003, plaintiff began weekly sessions with Dr. Minna Baker, a psychologist. In the spring of 2003, Dr. Baker diagnosed plaintiff with depression and PTSD. Record at 103-04.

In August 2003, the month of the claimed onset date, plaintiff traveled to Europe for slightly over a year to work on her Ph.D. dissertation. R&R at 3. In the hearing before the ALJ, plaintiff was unable to produce any medical records from the period of time she was in Europe. R&R at 3. However, she testified in the hearing that she spent

2

ten months in Florence living with friends and received a small stipend for translation work, which she was unable to finish due to her illness. Record at 144. Plaintiff explained that while in Europe she could typically only spend a few hours working per day and had impaired mental functioning due to her disability. Record at 141–43. Plaintiff further testified that she was supposed to receive shipments of medication from Dr. Garcia while in Europe, but that he did not send any. Record at 172. She also told the ALJ that she did not have money to obtain medical treatment from a doctor in Europe while she was there. Record at 145. After ten months in Florence, plaintiff received a research scholarship that allowed her to travel to finish her research, but, according to her testimony, she was unable to receive treatment while traveling. Record at 143–45. Plaintiff returned to the United States in December 2004, having completed the research needed for her doctoral dissertation. Record at 22 and 104.

After returning from Europe, plaintiff was treated again by her psychologist, Dr. Baker, starting in May 2005. Dr. Baker concluded that depression and PTSD severely limited plaintiff's ability to function. On August 4, 2005, Dr. Baker reported that plaintiff "has trouble concentrating and thinking clearly, cries for hours every day, becomes easily paralyzed by any stressful occasion, and is easily overcome by anger." Record at 104.

Based on the testimony and medical records presented at the hearing, the ALJ denied plaintiff's claim, finding that no objective medical evidence supported the contention that plaintiff had an onset date for her disability before September 30, 2004,

largely because plaintiff produced no medical records from her time in Europe.  Record at 22.  In deciding that plaintiff was not disabled between August 15, 2003, plaintiff's claimed onset date, and September 30, 2004, the ALJ did not appoint a medical advisor to help him infer an onset date.  Record at 20-22.  In his decision, the ALJ stated that "[w]hile [Kirkwood] did receive mental health treatment prior to her departure, there are no medical reports or treatment records covering her time abroad . . . and the evidence establishes that she did not resume therapy until after the date last insured in 2005."  Record at 21.  The Appeals Council denied plaintiff's request for administrative review.

Plaintiff then filed a complaint in this court, alleging that the ALJ committed various errors in denying her application for DIB.  Docket No. 9.  The request was referred to Magistrate Judge Jacob P. Hart, who filed a Report and Recommendation ("R&R") recommending that the ALJ's decision denying benefits be affirmed.  Docket No. 14.  In August 2010, I declined to the adopt the R&R and held instead that the ALJ committed procedural error by failing to appoint a medical advisor to advise on the onset date as required by SSR 83-20.  Docket No. 23.  I therefore remanded to the ALJ to rehear the case with the assistance of a medical advisor.

On November 11, 2010, plaintiff filed a motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, which the Commissioner opposes on the grounds that his agency's position in this case was substantially justified.

4

**II.    Discussion**

Under the EAJA, a prevailing party in a litigation against the government shall be awarded "fees and expenses . . . incurred by that party . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (2006). "Substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1998). Stated differently, "a government position is substantially justified 'if it has a reasonable basis in both law and fact.'" *Williams v. Astrue*, 600 F.3d 299, 302 (3d Cir. 2009) (quoting *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993)). In general, "a legal position is substantially justified if it relates to an unsettled or close question of law, but not if it offends established precedent." *Russell v. Heckler*, 814 F.2d 148, 153 (3d Cir. 1987); *see also Grossberg v. Barnhart*, 2005 WL 703736, at *2 (3d Cir. 2005).

The government bears the burden of demonstrating that its position was substantially justified. *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998) (citation omitted). In order to establish that its position was substantially justified, the government must show "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Id.* (citing *Hanover Potato*, 989 F.2d at 128).

5

The government's "position" includes both the position taken in the litigation and the position that initially made the litigation necessary. *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir. 1985).

As this court's earlier memorandum considering the merits of plaintiff's appeal noted, the ALJ should have appointed a medical advisor pursuant to SSR 83-20. *See* Docket No. 23. SSR 83-20 provides ALJs with a framework for determining the onset date of an applicant's disability. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 548 (3d Cir. 2003). As the Third Circuit has noted, "in cases in which the onset date is critical to a determination of entitlement to benefits, an ALJ must grapple with and adjudicate the question of onset, however difficult." *Id*. SSR 83-20 states in relevant part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.
> Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. . . .
> . . . .
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At

>   the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20.

The Third Circuit had occasion to explain this requirement in *Walton v. Halter,* 243 F.3d 703 (3d Cir. 2001). In *Walton*, the applicant claimed in 1994 that he was entitled to child's disability insurance benefits because he had suffered from bipolar-manic depression since before he turned age 22 in 1966. *Id.* at 705. Due to the limited medical records that the applicant could provide, however, the ALJ found the claim unsupported. *Id.* at 707–08. The Third Circuit later held that the ALJ failed to follow SSR 83-20 by not appointing a medical advisor to assist him in inferring the onset date. *Id.* The Third Circuit explained, "[i]f the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis.'" *Id.* at 709 (quoting *Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 1997)). The court noted that because the applicant's impairment was slowly progressive, the alleged onset date was far in the past, and no medical records were available from the relevant period, the ALJ could not "rely on his own lay analysis of the evidence" in inferring the onset date. *Id.*

The Third Circuit again addressed the issue in *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003). In *Newell*, the applicant claimed that she had been disabled

since July 1, 1997, but could not afford medical care at that time because she was uninsured. *Id*. at 543-44.  Nearly a year later, in June 1998, the applicant sought medical attention for various ailments, including diabetes, liver disease, and neuropathy. *Id*. at 542.  As a result of this delay, most of the evidence in her record was comprised of doctors' reports taken after the date that her disability needed to have commenced for her to be eligible for benefits. *Id.* at 542–43.  In a proceeding held in February 2000, an ALJ found that Newell's allegations were not supported by objective medical evidence. *Id.* at 544.  Newell appealed, and the Third Circuit ruled that the ALJ erred in failing to appoint a medical advisor under SSR 83-20 because the diseases were alleged to be slowly progressive and the onset date was critical to the determination of entitlement to benefits. *Id*. at 548.

     As in *Walton* and *Newell*, here the record was not complete, as there was no medical evidence from the time of the alleged onset date, but there was evidence that plaintiff suffered from a progressive condition.  Plaintiff had presented evidence of depression before her alleged onset date of August 15, 2003 and was found disabled after her return from Europe in June 2005, only nine months after her date last insured.  As was also the case in the precedential opinions above, an accurate determination of the onset date was critical to the success of plaintiff's claim.  In such a situation—when "an opinion based on personal, contemporaneous observation [is] not available"—SSR 83-20

requires the ALJ "to have the benefit of expert medical advice based on the best available data without regard to its source." *Walton,* 243 F.3d at 710. Hence, in my earlier memorandum, I held that a medical advisor was required. Docket No. 23.

However, as noted above, the EAJA is not an automatic fee-shifting statute. Therefore, even though the reasoning above led this court to find for the plaintiff, if the issue was a "close question" of law and the government's position was substantially justified, plaintiff will not win fees under the EAJA.

Arguing that this is indeed a "close question" of law, the Commissioner cites *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613 (3d Cir. 2009), and *TheLosen v. Comm'r of Soc. Sec.*, 384 F. App'x 86 (3d Cir. 2010), two non-precedential cases in which the Third Circuit found that a medical advisor was not needed to infer the onset date of claimant's disability. *See* Docket No. 27. As I have previously held, these cases are distinguishable from the present case. *See* Docket No. 23. In *Bailey*, for example, the claimant did not allege that the record was "incomplete or conflicting," and "[t]he ALJ did not rely on a lack of medical records showing treatment for mental illness as support for the absence of disability." 354 F. App'x at 618. In *TheLosen,* a medical advisor was not needed because any inference of an earlier onset date by the ALJ "would [have been] contrary to the medical evidence already before him." 384 F. App'x. at 91. Here, the record was incomplete, the ALJ did rely on a lack of medical records in declining to find

a disability, and the medical evidence on record was not contrary to the possibility of an earlier onset date, but pointed to such a possibility.

As the Commissioner argues, however, these non-precedential opinions do contain language suggesting that calling a medical advisor is only appropriate when the claimed date of onset is "far in the past." *See TheLosen*, 384 F. App'x at 91 (explaining that under SSR 83-20 a "medical advisor should be called where . . . the alleged onset date is so far in the past that obtaining adequate medical records is impossible"); *Bailey*, 354 F. App'x at 618 (explaining that "*Walton's* directive to seek out the services of a medical advisor is limited to situations where . . . the alleged onset date is far in the past"). Relying on this language, the Commissioner argued that Kirkwood's ailments did not begin sufficiently "far in the past" to require the use of a medical advisor under SSR 83-20. This court found the Commissioner's argument unpersuasive in light of *Newell*, where the Third Circuit held that SSR 83-20 required the ALJ to use a medical advisor to infer an onset date that was less than three years in the past. *See* 347 F.3d at 542. In this case, Kirkwood's alleged onset date was approximately three and a half years before the ALJ hearing, and was therefore slightly farther in the past than the onset date in *Newell*.

Nonetheless, the "far in the past" language in the non-precedential opinions does create some uncertainty and might be read to mean that SSR 83-20 only requires the use of a medical advisor when medical records are unable to be obtained due to the claimed

10

disability starting a very long time ago—such as more than a decade in the past, as in *Walton*.  This kind of uncertainty is sufficient to present the sort of "close question" of law required under the EAJA.  While, as explained above, this court ultimately disagrees with the government's position on the merits, it finds that it was not an unreasonable position to take.  *See Williams*, 600 F.3d at 302 ("It is well-settled in this circuit that 'a court cannot assume that the government's position was not substantially justified simply because the government lost on the merits.'" (quoting *Morgan*, 142 F.3d at 685)).

Accordingly, while the government's position with respect to the need for a medical advisor under SSR 83-20 in this case was incorrect, the court finds that its position was "substantially justified" as defined by the EAJA.

### III.   Conclusion

For the reasons stated above, the plaintiff's motion for attorney's fees is denied.  An appropriate order follows.